IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

LAURA A. CARPENTER and
LAURA CARPENTER FINE ART, INC.,

      Plaintiffs/Appellants/Cross-Appellees,

v.                                                                No. CIV 97-1197 BB/LCS

GINNY L. WILLIAMS,

      Defendant/Appellee/Cross-Appellant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on cross-appeals from a judgment entered in adversary proceeding No. 96-1082-M by the United States Bankruptcy Court for the District of New Mexico. In the Bankruptcy Court, Defendant/Appellee/Cross-Appellant Ginny L. Williams ["Williams"] asserted several claims of debt and fraud against Plaintiffs/Appellants/Cross-Appellees Laura L. Carpenter ["Carpenter"] and Laura Carpenter Fine Art, Incorporated ["LCFA"]. In turn, Carpenter and LCFA objected to Williams' claims, and filed counterclaims for breach of contract, equitable subordination, breach of the covenant of good faith and fair dealing, promissory estoppel, intentional or negligent misrepresentation, *quantum meruit*, unjust enrichment, *prima facie* tort, and fraudulent transfer.

The Bankruptcy Court ruled in Williams' favor on approximately $1.8 million in claims. That Court ruled in Carpenter's favor on part of her promissory estoppel counterclaim, awarding her approximately $20,800 on her breach of contract claim, and decreeing specific performance on the art investment contract which provided that she receive 50% of the profits upon its performance. The parties have appealed each of these rulings, as well as most of the claims and counterclaims the Bankruptcy Court denied. The Magistrate Court has reviewed the record and made proposed findings and a recommended disposition. This Court adopts the proposed findings and recommendations of the Magistrate Judge except as discussed below.

## Discussion

**1.    The Bankruptcy Court's ruling that no interest is due on the $1,572,069 must be remanded**

There was substantial disagreement in the Bankruptcy Court as to how to characterize the $1,572,069 Williams advanced LCFA and Carpenter beginning in November 1993. The Bankruptcy Court determined this was a loan. The Bankruptcy Court found, and all of the parties agree, that there was no discussion, and accordingly no agreement, that interest would be due on the $1,572,069. The Bankruptcy Court therefore concluded that the $1,572,069 loan was interest-free. This conclusion appears to contravene the accepted law in New Mexico.

Where one party has had use of a fund which legally belongs to the claimant under a contract, prejudgment interest allows the court to compensate the second party for loss of earning power on the funds he was wrongfully deprived of. *State ex rel. Bob Davis Masonry, Inc. v. Safeco Ins. of Am.*, 883 P.2d 144 (N.M. 1994). Following the RESTATEMENT OF CONTRACTS, the New Mexico courts have held if the parties do not determine otherwise, simple interest at the statutory rate is recoverable both under breach of contract and principles of equity. *Taylor v. Allegretto*, 879 P.2d 86, 89 (N.M. 1994); *Shaeffer v. Kelton*, 619 P.2d 1226, 1231 (N.M. 1980).

This Court has previously recognized, as the Magistrate Court now recommends, that NMSA 1978 § 56-8-3 empowers "private lenders to charge interest on money debts at the legal rate where the contract is silent on the issue." *Martinez v. Albuquerque Collection Services, Inc.*, 867 F. Supp. 1495, 1508 (D.N.M. 1994). Williams sought to have the money advanced characterized as a loan contract and requested the Bankruptcy Court impose interest. Since the Court found this was indeed a loan, it should have imposed interest. When the parties have not contractually agreed to interest, however, the interest is due and payable from the date of refusal of payment. *Id.* Ascertainment of the proper amount of interest thus requires the Bankruptcy Court to enter a finding

as to when LCFA refused payment of the amounts which total $1,572,069 and then impose interest at the statutory rate.

## 2. The Bankruptcy Court's ruling that Williams was entitled to 7% on the Women's Bank loan was not clearly erroneous

The Magistrate Court recommends a reversal of the finding by the Bankruptcy Court that Williams should be reimbursed for interest on the Women's Bank loan at 7%. The Magistrate Judge reasons:

> As to the rate of interest, however, the Bankruptcy Court clearly erred in finding that the parties agreed that Williams would receive a rate of seven percent. Exhibit 333 demonstrates that the seven percent figure was a compromise offer, which Carpenter rejected, and that the actual rate of the loan, at the time offer was made, had risen to 8.5 percent. Because it appears that the interest rate was variable and the record is incomplete, I recommend this case be **REVERSED and REMANDED** so that the Bankruptcy Court can determine the applicable interest rates in effect during the life of the loan.

Magistrate Judge's Proposed Findings and Recommended Disposition ["MJPFRD"] at 18 (emphasis in original).

This Court cannot agree that Exhibit 333 "demonstrates that the 7% was a compromise offer, which Carpenter rejected." To the contrary, Exhibit 333 appears to memorialize the parties' prior agreement to the 7% interest figure. That memo, between the parties' respective accountants, begins, "It has been understood and

4

mutually agreed upon by both Laura and Ginny that Ginny would be paid interest at the rate of 7% in order to reimburse her for interest expense paid to the bank for monies borrowed to acquire the art." The fact the parties later disagree as to the meaning and extent of their contract does not invalidate the contract. *Gardner-Zemke Co. v. State*, 790 P.2d 1010 (N.M. 1990). This Court cannot conclude the language of Exhibit 333 requires the finding of the Bankruptcy Court be reversed. It is accordingly Affirmed.

## 3.    Specific performance is an appropriate remedy on the art investment agreement

"Early in their relationship Carpenter and Williams agreed to accumulate an inventory of contemporary art, taking advantage of a depressed art market, and hold the art for profitable resale in the future." Bankruptcy Court Findings of Fact and Conclusions of Law ["BCFFCL"] ¶ 49 at 13. The Court further found this oral working agreement "was evidenced by the document entitled 'AGREEMENT: ART INVESTMENT COMPANY.'" BCFFCL at 37. The Bankruptcy Judge further found that "the terms of the art investment agreement specifically provide that the optimum retention of the art inventory will be 'at least five years.'" BCFFCL at 45. Based on the fact this agreement required the considered judgment of the parties on the optimum

time to sell each piece and "[g]iven the uncertainties of the art market,"[1] the Bankruptcy Court ordered specific performance of the art investment agreement.

The Magistrate Court recommends reversal of the specific performance remedy on the ground that the Bankruptcy Court failed to enter a specific finding that damages would not be an adequate remedy for the breach of the art investment agreement. While the BCFFCL are certainly not as explicit as they could be on this point, this Court concludes the Bankruptcy Court did find damages an inadequate remedy for the breach of the art investment agreement. In addition to noting "the uncertainties of the art market," the Bankruptcy Court said it "finds Carpenter and LCFA have not been damaged by any delay caused by Williams in the sale of the art." BCFFCL at 45.

The agreement makes no mention of what should happen if the artwork is sold at a loss. Indeed, if all the art were immediately liquidated, it would be Williams who would most likely take a loss on her actual investment in the art. On the other hand, it would also be almost impossible to calculate any loss for Carpenter or LCFA since there is no yardstick against which to measure the potential of the contract. If the art

---

[1] BCFFCL at 46.

were held an additional two years, would Carpenter have gained a profit?  How much?  What if some pieces were held five years?[2]

The art investment agreement thus presents an exceptionally thorny issue.  The Bankruptcy Court also found the nonbreaching party had not been damaged by any delay in implementing the agreement. The Bankruptcy Court recognized, at least implicitly, the difficulty in attempting to calculate future damages under a contract which required the agreement of the parties as to both the optimum time to sell and the appropriate price on each piece of modern art.

Specific performance is a remedy within the discretion of the trial court to be exercised in accordance with general principles of equity jurisprudence.  *El Paso Natural Gas Co. v. Western Bldg. Associates*, 675 F.2d 1135 (10th Cir. 1982).  While legal remedies must be found to be inadequate before specific performance may be invoked, under New Mexico law the remedy at law must be as certain, prompt, complete, and efficient as specific performance.  *City of Las Cruces v. El Paso Elec. Co.*, 904 F. Supp. 1238 (D.N.M. 1995).  *See also* RESTATEMENT (SECOND) OF CONTRACTS § 360 (1981)

---

[2] Indeed, in her objections to the Magistrate's proposal that damages be calculated at the end of 1994, Carpenter points out, "In this instance, the parties contemplated retention of the bulk of the art for a period of years."  Laura Carpenter's Obj. at 2.  Indeed, fully half of Carpenter's objections are directed to the potential difficulties with calculating appropriate damages under the Magistrate's proposal.

(difficulty of proving damages with reasonable certainty a factor to consider in granting specific performance). In the present context, it would be difficult to fairly characterize damages to be either as certain or as complete as specific performance.

Specific performance is a practical remedy. *Atchison v. City of Englewood*, 568 P.2d 13 (Colo. 1977); *Matter of Bisio's Estate*, 576 P.2d 801 (Or. App. 1978). Therefore, when the calculation of damages at law becomes highly speculative, specific performance is an appropriate remedy. *McFarland v. Gregory*, 322 F.2d 737 (2$^d$ Cir. 1963); *LaMirada Products Co. v. Wassall*, 823 F. Supp. 138 (S.D.N.Y. 1993); *City Stores Co. v. Ammerman*, 266 F. Supp. 766 (D.D.C. 1967), *aff'd*, 394 F.2d 950 (D.C. Cir. 1968). *Cf. Pugh v. Tidwell*, 199 P.2d 1001,1004 (N.M. 1948) (recognizing rule in *dicta*). Indeed, modern legal scholars have come to recognize specific performance is most appropriate when damages are difficult to compute because there are no acceptable market substitutes. Richard A. Posner, *Economic Analysis of Law* at 130 (4th ed. 1992); Alan Schwartz, *The Myth That Promisees Prefer Supracompensatory Remedies*, 100 Yale L.J. 369, 371 (1990). *Cf.* Cass A. Sunstein, *Incommensurebility and Valuation in Law*, 92 Mich. L. Rev. 779, 844 (1994) ("We might conclude that, when it is especially expensive to determine damages, courts will order specific performance."). Since specific performance is an accommodation directed toward preserving judicial

resources as well as an attempt to create an equitable remedy, it is not a controlling consideration that neither side requested such relief.  Moreover, Carpenter's extensive caveats directed toward the Magistrate's recommendation that the case be remanded for a calculation of damages illustrate why damages are not a satisfactory remedy.

This is clearly a situation where damages would be extremely difficult, if not impossible, to calculate.  The Magistrate Court recognized this difficulty but concluded that while "evaluating the worth of the art inventory at the time of the breach will be substantial, it seems that such a procedure would actually prove more prompt and efficient in resolving this dispute than forcing the parties to perform the art investment agreement according to its terms."  MJPFRD at 21.  This is a debatable proposition.  The parties already possess the expertise to evaluate and predict the market for modern art.  The Bankruptcy Court would likely be required to invest substantial time and energy in hearing testimony from several experts and still not likely acquire the background already possessed by both of these parties.  Therefore, the Court cannot hold that the Bankruptcy Court's imposition of specific performance is reversible error.

## **O R D E R**

For the above stated reasons, the Court adopts the findings and recommendations of the Magistrate Judge except:

1.  The Bankruptcy Court's ruling that no interest is due on the $1,572,069 is **REMANDED** to enter a finding as to when LCFA refused payment of the amounts which total $1,572,069 and then impose interest at the statutory rate.

2.  The Bankruptcy Court's ruling that Williams was entitled to 7% on the Women's Bank loan is **AFFIRMED**.

3.  The Bankruptcy Court's requirement that the art investment agreement be specifically performed is **AFFIRMED**.

4.  In all other respects, this Court adopts the findings and recommendations of the Magistrate Judge.

Dated at Albuquerque this 10th day of September, 1998.

                                                                  _____
                                                                  **BRUCE D. BLACK**
                                                                  United States District Judge

Counsel for Plaintiffs:
     Russell Moore, Spencer Reid, James C. Jacobsen, Keleher & McLeod, Albuquerque, NM

Counsel for Defendant:
     Gail Gottlieb, Sutin, Thayer & Browne, Albuquerque, NM